1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES A. BATTLE, JR.,

                          Plaintiff,

        v.

ARLEN HATTLE, BERNARD
WARNER, STEPHEN LARD, DAWN
THOMPSON, LAURENCE MAYS, K.
BRUNER, ELDON VAIL, GARY
HARP[1],

                          Defendants.

No. C13-5086 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  December 13, 2013**

    Before the Court are Plaintiff James A. Battle, Jr.'s motion for summary judgment

against Defendant Laurence Mays (ECF No. 30) and Defendant Laurence Mays' cross-motion

for summary judgment and response.  (ECF No. 35).  On October 3, 2013, Defendant Mays

provided Plaintiff with a notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th

Cir. 2012).   The Court re-noted the motions to be considered on the same date.  Both parties

filed responses to the cross-motion.  ECF Nos. 40 and 41.  On November 4, 2013, Mr. Battle

filed an additional response, declaration, and "supplement" response.  ECF Nos. 42, 43, and 44.

    Based on the Court's review of the motions, opposition, summary judgment evidence,

and balance of the record, the Court concludes that Plaintiff's motion for summary judgment

should be denied and Defendant Mays' motion for summary judgment should be granted.

---

[1] Defendants Harp and Thompson were dismissed from this action on August 19, 2013.  ECF No. 28.

REPORT AND RECOMMENDATION- 1

**BACKGROUND**

At issue in these summary judgment motions is Mr. Battle's claim that Defendant Mays violated Mr. Battle's rights when Defendant Mays provided Mr. Battle with courtesy copies of legal documents that had been e-mailed to Mr. Mays by a law firm representing defendants in a prior civil rights action filed by Mr. Battle in this Court, *Battle v. Baalaer, et al.*, U.S. District Court Cause No. C10-5410-RSM-MAT (*Baalaer*). Mr. Battle claims that his due process and equal protection rights were violated, as well as his right to petition the government. He also argues that Mr. Mays violated DOC mail policy 450.100.

The undersigned notes that Mr. Battle previously challenged Mr. Mays' actions and the actions of opposing counsel by filing several motions for sanctions against the defendants in the *Baalaer* case. The Court not only denied the motions but found them to be frivolous and further sanctioned Mr. Battle to pay the defendants $250.00.   In this case, Defendants raised the doctrine of collateral estoppel as an affirmative defense in their answer. ECF No. 22, p. 6. However, Defendant Mays does not rely on the doctrine in opposing Mr. Battle's motion for summary judgment or in his cross-motion for summary judgment. ECF No. 35, p. 12.

**EVIDENTIARY ISSUES**

Attached to Mr. Battle's motion for summary judgment are handwritten transcripts of the deposition of Lawrence Mays which purportedly occurred on June 13, 2013 at 10:10 a.m., and the deposition of Katherine Bruner which purportedly occurred on June 13, 2013 at 11:10 a.m. ECF No. 31, pp. 13-20, pp. 59-64.

Unlike a court reporter's transcription, Mr. Battle's handwritten transcriptions of depositions are not an official record of the deposition testimony and therefore would not be admissible in court or as part of a response to a summary judgment motion. The unofficial

REPORT AND RECOMMENDATION- 2

transcriptions do not comply with Fed.R.Civ.P. 30(f)(1), which requires that an officer who conducted the deposition certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony.  In addition, Rule 28(c) provides that the officer before a deposition is taken (and who must certify the transcription pursuant to CR 30(f)) may not be a party interested in the action, any party's relative or employee or in any way related to a party to the action.

Accordingly, the Court has not considered Mr. Battle's hand-written transcripts.  In addition, where assertions are not under penalty of perjury, such as those contained in Mr. Battle's motion for summary judgment, the assertions do not constitute evidence and do not create issues of fact.  *See Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No*. 334, 574 F.2d 484, 486 n. 2 (9th Cir.1978) (assertions made in complaint, legal memoranda, or oral argument are not evidence and do not create issues of fact); *Coverdell v. Department of Social and Health Services*, 834 F.2d 758, 762 (9th Cir.1987).

### FACTS

Mr. Battle's claims against Defendant Mays relate to several items of mail sent to Mr. Battle by opposing counsel (Keating, Bucklin & McCormack) in the *Baalaer* case.  It appears that at some time in 2011, Mr. Battle notified Keating, Bucklin & McCormack that he had not received an item of mail from them that had apparently been sent through the postal service.  The law firm sent a courtesy copy of the missing mail item via e-mail to Defendant Mays, who was Mr. Battle's counselor at the Stafford Creek Corrections Center.  ECF No. 5, pp. 12-16. Defendant Mays then printed the copy and delivered it to Mr. Battle at his cell door.  In his answers to written discovery requests, Defendant Mays states that he agreed to provide Mr. Battle with courtesy copies of legal papers in the lawsuit with the understanding that Mr. Battle

REPORT AND RECOMMENDATION- 3

would also receive copies through the mail.  ECF No. 31, pp. 21- 30.  Copies of documents

attached to Mr. Battle's declaration in support of his motion for summary judgment include at

least two pieces of correspondence sent in this manner:  (1) July 22, 2011 letter from Keating,

Bucklin & McCormack to Mr. Battle, sent certified mail, return receipt requested, enclosing

copies of police reports in Case No. C10-5410 (ECF No. 31, p. 54) and (2) October 10, 2011

letter from Keating, Bucklin & McCormack to Mr. Battle, sent certified mail, return receipt

requested, notifying Mr. Battle that counsel received sets of discovery propounded by Mr. Battle

but considered the discovery to have been sent beyond the Court's discovery deadline (ECF No.

31, pp. 55-56).   Mr. Battle asserts that Defendant Mays continued to receive mail from opposing

counsel in this matter for approximately four months.  ECF No. 43, Declaration of James Battle,

p. 2.

        Thereafter, the law firm continued to send additional copies of their mailed

correspondence to Mr. Battle via e-mail through Defendant Mays until they were told to

discontinue this practice.  In response to a grievance filed by Mr. Battle, investigations

determined that the documents e-mailed through Defendant Mays to Mr. Battle were public

record and were not "Attorney Client in nature".  ECF No. 5, p. 29.

        In his initial grievance, Mr. Battle grieved Mr. Mays' conduct as follows:

> CCII Larry Mays under grievable items 4, actions of employees, were Mays has
> entered into an agreement with an advisarial [sic] lawfirm to handle, receive, and
> issue my legal mail in violation of DOC Policy 450.100, WAC Rule 137-48-020,
> SCCC Legal Mail call out procedures and state & federal constitutional laws.
> This method of receiving, reading, handling & service of my legal mail violates
> my rights to privacy, confidentiality and court order.  This lawfirm is not my legal
> representation, nor are they responsible for protecting my rights while being a
> ward of the State.  The incident started back in June and has continued to date.
> Last incident dated July 29, 2011.

REPORT AND RECOMMENDATION- 4

Grievance Coordinator Kerri S. McTarsney provided the following response:

> Counsel Mays reports what occurred was that you originally did not receive legal
> documents through the mail from the law firm so they e-mailed to Counselor
> Mays to provide to you as a courtesy.  Counselor Mays states that since that time
> you have had telephone conferences with the law firm and you did not request to
> them that they stop sending an additional copy of your legal mail to you
> electronically as well as through the United States Post Office.
> Counselor Mays will immediately electronically return any e-mails received from
> the law firm and direct them to send items via USPS only as receiving items
> electronically is outside of DOC Policy 590.500 guidelines.

ECF No. 31, p. 31.

In his third level appeal of Mr. Mays' conduct, Mr. Battle stated:

> CCII Larry Mays, grievable item #4.  Mays entered into agreement with an
> adversarial lawfirm who I have a pending lawsuit against its clients.  They called
> Mays by telephone and asked if they could send him my legal mail via electronic
> transmission.  (1) under the Fed. Rules I must consent in written agreement to
> have my mail sent via e-mail or other means.  I did not consent.  (2) legal
> documents sent via e-mail to an inmate through his counselor violates DOC
> Policies 450.100, 590.500 and WAC rule 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; (3) My documents were
> not of public record, but under protection of the Court; (4) Mays was told by me
> that he must not receive my mail in this manner as it violates policy & statute.  I
> also received a court order which admonished the law firm against such behavior.
> Mays' action were not an isolated incident, but, over a 5 month period violated
> and obstructed my lawsuit, because DOC policy states e-mail does not constitute
> legal mail.

ECF No. 5, p. 29.  Mr. Battle received the following response, in relevant part:

DOC Investigator Katelyn Daugherty also reviewed this grievance and provided this

response:

> I have reviewed your initial grievance, all responses and appeals.  I have also
> contacted DOC Program Manager, Roy Gonzalez, and CUS Bruner.  The Level I
> and II response appropriately addressed your concern.  There is nothing to
> substantiate your allegation that Counselor Mays acted unprofessionally nor that
> he violated confidentiality.
>
> The Attorney was contacted and confirmed that the documents were requested
> from you and were not Attorney Client Confidential in nature and as such, are
> public record.  As noted in your previous responses, the law firm was notified that
> staff will no longer accept any documents for you.  In regard to your suggested

REPORT AND RECOMMENDATION- 5

remedy of monetary compensation, the offender grievance program does not
provide reimbursement for alleged losses or damages.

ECF No. 5, p. 29.

According to Defendant Mays, he was contacted in June 2011 by an attorney from the
Seattle law firm of Keating, Bucklin, and McCormack, who asked him if he would provide
inmate James Battle with legal-related documents that the law firm would e-mail to Mr. Mays at
his work computer.  It was Mr. Mays' understanding that none of the documents were
confidential or privileged so he agreed to accept the documents, to print them, and to provide the
printed documents directly to Mr. Battle.  On several prior occasions, Mr. Mays had served legal
documents on Stafford Creek Corrections Center (SCCC) inmates that were e-mailed to SCCC
by the Washington Attorney General's Office and he viewed the Seattle law firm's request as
being similar to what he had done for the Attorney General's Office.  ECF No. 35, Exhibit 1,
Declaration of Laurence C. Mays at ¶ 2.

Mr. Mays was aware that the Seattle law firm was representing law enforcement officers
whom Mr. Battle was suing.  However, he thought that providing courtesy copies to Mr. Battle
would be a benefit to both Mr. Battle and the law firm.  It was his understanding that the Seattle
law firm would also mail original copies to Mr. Battle.  To the best of his recollection, he never
served any legal documents on Mr. Battle and never signed any affidavit or declaration
indicating that he had personally served Mr. Battle with legal documents.  ECF No. 35, Exhibit
1, Mays Decl., at ¶ 3.

Mr. Battle indicated to Mr. Mays on several occasions that he did not want Mr. Mays to
provide him documents that had been e-mailed to him by the Seattle law firm, but Mr. Mays
continued to provide Mr. Battle documents at the request of the law firm.  To the best of his
recollection, Mr. Mays provided Mr. Battle with legal documents sent to him by the Seattle law

REPORT AND RECOMMENDATION- 6

firm a total of seven or eight times.  After approximately October 2011, Mr. Mays ceased

providing Mr. Battle with documents from the law firm.  ECF No. 35, Exhibit 1, Mays Decl., at ¶

4.

       Mr. Mays states that he did not share the legal documents he received from the Seattle

law firm with any other staff at SCCC and these documents were never used by Mr. Mays for

any purpose other than to provide courtesy copies to Mr. Battle.  ECF No. 35, Exhibit 1, Mays

Decl., at ¶ 5.  Mr. Mays' vaguely recalls Mr. Battle filing a prison grievance over this issue

but does not recall the outcome of the grievance and does not recall being advised to cease

providing Mr. Battle documents e-mailed to him by the Seattle law firm.  *Id.*, at ¶ 6.

       Mr. Mays was advised by the attorney from the Seattle law firm that Mr. Battle had

challenged Mr. Mays providing Mr. Battle with courtesy copies of legal documents in court.  The

attorney sent Mr. Mays an order from the court rejecting Mr. Battle's challenge to Mr. Mays

providing him with courtesy copies of legal documents.  ECF No. 35, Exhibit 1, Attachment A,

Order Re: Plaintiff's Motions for Sanctions, *Battle v. Baalaer, et al.*, U.S. District Court at

Seattle Cause No. C10-5410-RSM-MAJ.

## SUMMARY JUDGMENT STANDARD

       The Court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce

any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato*

REPORT AND RECOMMENDATION- 7

*Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

## DISCUSSION

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *Crumption v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated

REPORT AND RECOMMENDATION- 8

in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Mr. Battle argues that despite Defendant Mays' knowledge of policies governing inmate legal mail and Defendant Mays' contention that he processed Mr. Battle's mail correctly, Defendant Mays deliberately and willfully decided to "assist" the police officers in the *Baalaer* case and that for four months Mays "obstructed Battle's litigation."  ECF No. 30, p. 3.  Mr. Battle also argues that it is his belief that Defendant Mays was processing his mail incorrectly because Defendant Mays had decided to help Mr. Battle's opponent in Case No. C10-5410.

Although Mr. Battle characterizes the mail at issue as "legal" mail, mail from opposing counsel is not "legal" mail.  Only mail from his own attorney (and not mail from opposing counsel or from a public agency) is confidential legal mail.  *Cf. Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir.1996), amended, 135 F.3d 1318 (9th Cir.1998) (prison officials may open and inspect mail to prisoner from courts outside prisoner's presence because mail from courts, as opposed to mail from a prisoner's own lawyer, is not "legal mail"); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir.1987) (mail from court to litigant generally is not legal mail).  There is no confidential relationship between a prisoner and opposing counsel, unlike the confidential attorney-client relationship that exists between a litigant and his own attorney.  Not only is there generally not a confidential relationship, the letters here do not call out for any special treatment. For § 1983 purposes, Mr. Battle's mail claim will be analyzed as a claim involving non-legal mail.

REPORT AND RECOMMENDATION- 9

Further, it is undisputed that Mr. Battle was informed by DOC officials during the grievance process that receiving items electronically is outside of DOC Policy 590.500 guidelines.  However, violation of DOC policies are not laws and do not have the force of law. *Joyce v. Dept. of Corr.*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005).  This Court previously found in *Baalaer* that the provision of courtesy copies of documents to Mr. Battle did not violate the court rules or state law:

> Providing courtesy copies of those documents to plaintiff through his prison counselor did not violate any provision of the Federal Rules of Civil Procedure or the Local Rules of this Court.  Accordingly, plaintiff's request for sanction based on defendants' alleged failure to effect proper service is frivolous.  Plaintiff's request for sanctions based on defendants' alleged violation of the Washington State Criminal Records Privacy Act, RCW 10.97, et seq., and the protective orders referenced above, is also frivolous.

ECF No. 35, Exhibit 1, Attachment A at 4.

## A.    First Amendment - Mail

Prisoners enjoy a First Amendment right to send and receive mail.  *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)).  The prisoner's rights with respect to mail differ depending on whether it is legal or non-legal mail.   With regard to non-legal mail, a prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir.2001) (quoting *Jones v. No. Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129 (1977)) (internal quotation marks omitted).

Prison officials may inspect non-legal mail for contraband without violating a prisoner's constitutional rights.  *See Smith v. Boyd*, 945 F.2d 1041, 1043 (9th Cir.1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir.1986) (upholding

REPORT AND RECOMMENDATION- 10

inspection of outgoing and incoming mail).  In contrast, "[legal] mail may be opened in the presence of the addressee and ... prison officials can require both that the letters be specially marked with the name and address of the attorney and that the attorney communicate first with prison officials." *Sherman v. McDougall,* 656 F.2d 527, 528 (9th Cir.1981) (*citing Wolff v. MacDonald*, 418 U.S. 539, 575–77 (1974)).  An isolated instance or an occasional opening of legal mail outside of an inmate's presence does not rise to the level of a constitutional violation. See *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir.1989).

Thus, even if Mr. Mays opened and read the documents attached to the e-mails received from Keating, Bucklin, and McCormack before he delivered the documents to Mr. Battle, there is no constitutional violation.  Moreover, Mr. Battle fails to establish that he was in any way harmed by the manner in which Mr. Mays handled the e-mails.

Thus, to the extent Mr. Battle contends that Mr. Mays' handling of the courtesy copies violated his First Amendment right to receive mail, the claim is without merit and should be dismissed.

**B.    Due Process**

Mr. Battle also claims that his due process rights were violated by Mr. Mays' alleged "obstruction" of his litigation for four months.  This claim is without merit.

The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process.  An action under 42 U.S.C. § 1983 based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993).  The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected

REPORT AND RECOMMENDATION- 11

liberty interest is at stake.  *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir.1993), citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  Liberty interests can arise both under the Constitution and from state law.  *Wolff*, 418 U.S. at 557-58, 94 S.Ct. 2963.

 With respect to liberty interests created under the Constitution, the Court has held that prisoners have a Fourteenth Amendment liberty interest in "uncensored communication by letter," although this interest is "qualified of necessity by the circumstance of imprisonment." *Martinez*, 416 U.S. at 417-18, 94 S.Ct. 1800; see also *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir.1999) (prisoners have a "Fourteenth Amendment due process liberty interest in receiving notice that ... incoming mail is being withheld by prison authorities"), citing *Thornburgh*, 490 U.S. at 406, 109 S.Ct. 1874.  This liberty interest is protected from "arbitrary government invasion," and any decision to censor or withhold delivery of mail must be accompanied by "minimum procedural safeguards."  *Martinez*, 416 U.S. at 418, 94 S.Ct. 1800.  The following minimum safeguards are required when a liberty interest is implicated:  (1) notifying the inmate of the rejection of a letter; (2) allowing the author of the letter a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the person who made the censorship decision.  *Id*. at 418-19, 94 S.Ct. 1800.  The Ninth Circuit "has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards" established in *Martinez.  Krug v. Lutz,* 329 F.3d 692, 697-98 (9th Cir.2003), citing *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir.2002) and *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir.2001).

 Regarding state-created liberty interests, the Supreme Court has held that states may under some circumstances create liberty interests protected by the Due Process clause, but that

REPORT AND RECOMMENDATION- 12

those liberty interests "will be generally limited to freedom from restraint which ... impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 484.

Mr. Battle's due process claim fails because Mr. Mays did not deprive Mr. Battle of a liberty or property interest, or any other interest protected by the Constitution.  It is apparent that Mr. Mays' actions did not deprive Mr. Battle of his liberty as Mr. Battle's criminal sentence was not affected and he was not physically restrained in any way by Mr. Mays' actions.  Similarly, Mr. Mays' actions did not deprive Mr. Battle of any property as it is undisputed that Mr. Battle received all the documents at issue in the *Baalaer* case.

There is nothing to support a conclusion that Mr. Battle had a constitutionally protected interest in receiving legal documents from opposing counsel in the *Baalaer* case only via mail delivered by the United States Postal Service.  As noted above, his reliance on the language of DOC Policy 450.100 to support his due process claim is misplaced.  Under *Sandin,* the test is whether Mr. Mays' action of providing courtesy copies of legal documents imposed an "atypical and significant hardship" on Mr. Battle "in relation to the ordinary incidents of prison life." Clearly, Mr. Mays' actions did not affect Mr. Battle's normal prison life because he remained free to do all the things he normally did in prison, including remaining in general population, working, eating, and engaging in recreation.  Mr. Battle was also free to do whatever he wanted with the courtesy copies provided to him by Mr. Mays, including simply ignoring them or throwing them in the garbage.

Mr. Battle's due process claim is without merit and should be dismissed.

*//*

*//*

REPORT AND RECOMMENDATION- 13

## C.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  The Equal Protection Clause does not forbid classifications and indeed most laws differentiate in some fashion between classes of persons.  *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992).  The Equal Protection Clause merely prohibits governmental decision makers from treating differently persons who are in all relevant respects alike. *Id*.

As noted above, this Court previously found that providing Mr. Battle with courtesy copies of legal documents received by e-mail did not violate court rules or state law.  ECF No. 35, Exhibit 1, Attachment A at 4.   Thus, Defendant Mays did not deny Mr. Battle equal protection of the laws because Mr. Battle had no legal right to not receive courtesy copies of the documents in the manner he received them from Mr. Mays.

Additionally, there is no evidence that Mr. Mays intentionally discriminated against Mr. Battle in the handling of his mail.  Mr. Battle first attempts to carve himself out as a separate class.  He claims that Defendant Mays chose to handle his mail differently and disrupted only his mail and not that of other inmates.  A prisoner involved in a civil action is not a protected class. To prevail on equal protection claim, plaintiff must allege that he is a member of a protected class or that Defendant Mays handled his mail differently from mail of other similarly situated individuals.  There is no such evidence here.  Mr. Battle's equal protection claim is without merit and should be dimissed.

## D.      Right to Petition

Prisoners have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts.  *Hudson v. Palmer*, 468

REPORT AND RECOMMENDATION- 14

U.S. 517, 523 (1984) (citing *Johnson v. Avery*, 393 U.S. 483 (1969)); *O'Keefe v. Van Boening*, 82 F.3d 322 (9th Cir. 1996).  This right extends to administrative arms and units of the government.  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *O'Keefe, supra*.

In order to establish that government action has infringed on the constitutional right to petition the government, an individual need not show that the government has directly interfered with the exercise of this right.  *Laird v. Tatum*, 408 U.S. 1, 11, 92 S. Ct. 2318, 2324-25, 33 L. Ed. 2d 154 (1972).  Unconstitutional restrictions may arise from the deterrent, or "chilling," effect of governmental actions.  *Id*.  To have such an effect, the government action must be regulatory, proscriptive, or compulsory in nature, and complainant must be either presently or prospectively subject to the regulation, proscriptions, or compulsions that he or she is challenging.  *Id*.  Further, an unconstitutional chill will only exist if the government action has injured the individual or places the individual in immediate danger of sustaining a direct injury.  *Id.* at 13, 92 S. Ct. at 2325-26.

There is no evidence from which it may be reasonably inferred that by providing the courtesy copies to Mr. Battle, Defendant Mays negatively impacted Mr. Battle's right to petition. The record reflects that all the documents provided by Mr. Mays were, to his knowledge, public records that were not confidential or privileged.  ECF No. 35, Exhibit 1, Mays Decl.  Mr. Mays did not share these documents with other DOC staff and did not use them for any purpose other than to provide Mr. Battle with courtesy copies.  *Id*.  There is no evidence to the contrary.

There is also no evidence that providing the courtesy copies negatively impacted Mr. Battle's litigation of the *Baalaer* case, this case, or any other case.  There is no evidence that Mr. Battle suffered any injury whatsoever by Defendant Mays' actions.

Mr. Battle's right to petition claim is without merit and should be dismissed.

REPORT AND RECOMMENDATION- 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**E.      Qualified Immunity**

Defendant Mays also argues that he is entitled to qualified immunity.  ECF No. 35, pp.

10-11.  Under the doctrine of qualified immunity, prison officials are "shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  A civil rights plaintiff opposing a claim of qualified immunity must

establish the existence of a constitutional violation, clearly established law to support the claim,

and that no reasonable official could believe their conduct was lawful.  *Pearson v. Callahan*, 555

U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232

(1991).

As the Court has concluded that Mr. Battle has failed to raise material issues of fact

relating to his constitutional claims against Defendant Mays, it is not necessary to address the

question of qualified immunity.

**CONCLUSION**

Based on the foregoing, the undersigned recommends that Plaintiff's Motion for

Summary Judgment Against Laurence Mays (ECF No. 30) be **DENIED,** Defendant Mays'

Cross-Motion for Summary Judgment (ECF No. 35) be **GRANTED,** and Plaintiff's claims

against Defendant Laurence Mays be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the

REPORT AND RECOMMENDATION- 16

time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on

**December 13, 2013**, as noted in the caption.

      **DATED** this ͟ 18th ͟ day of November, 2013.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 17