UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES A. BATTLE, JR.,<br><br>                       Plaintiff,<br><br>   v.<br><br>ARLEN HATTEL, BERNARD WARNER, STEPHEN LARD, DAWN THOMPSON, LAURENCE MAYS, K. BRUNER, ELDON VAIL, GARY HARP,<br><br>                       Defendants. | No. C13-5086 BHS-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  February 28, 2014** |

Before the Court is the motion for summary judgment of Defendants K. Bruner, Arlen Hattel, Stephen Land[1], and Bernard Warner.  Dkt. 47. On January 2, 2014, Defendants provided Plaintiff James A. Battle, Jr., with a notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012).   Mr. Battle did not file a response.  Based on the Court's review of the motion, summary judgment evidence, and balance of the record, the Court concludes that Defendants' motion for summary judgment should be granted.

## BACKGROUND

In this 42 U.S.C. § 1983 civil rights complaint Mr. Battle alleges that Defendants, employees of the Department of Corrections (DOC), violated his constitutional rights by wrongfully placing him in administrative segregation, by providing him copies of legal documents that were e-mailed to his counselor Laurence Mays, and by taking his prison account

---

[1] Defendant Stephen Land is incorrectly referred to in the case caption as Stephen "Lard."

REPORT AND RECOMMENDATION- 1

below the $10.00 indigency level set by state law on two occasions. Dkt. 5. At the time of his allegations, Mr. Battle was incarcerated at the Stafford Creek Corrections Center (SCCC).

The parties' cross-moved for summary judgment on Mr. Battle's claim against Mr. Mays (providing legal documents that were e-mailed to Mr. Mays) and the Court granted Mr. May's motion for summary judgment and dismissed him from this action. Dkt. 46.[2] The present summary judgment motion deals with Mr. Battle's claims that he was wrongfully infracted and segregated and that funds were wrongfully taken from his prison account. In addition, the Court recommends dismissal of Eldon Vail, the one remaining defendant named in Mr. Battle's complaint.

**FACTS**

**A.    January 14, 2013 Infraction and Segregation (Incident of 12/25/12) – Defendants Hattel and Bruner**

On December 25, 2012 Correctional Officer (CO) Arlen Hattel was working in H-1 B pod at SCCC. At approximately 10:00 p.m. CO Dennis Persell called in a fight in H-1 A pod living unit to SCCC master control by radio. CO Hattel was working in H-1 B pod and after hearing CO Persell's radio transmission to master control CO Hattel immediately responded to H-1 A pod. Dkt. 47-1, Exhibit 1, Declaration of Arlen Hattel, p. 1.

When CO Hattel first entered H-1 A pod he noticed several offenders loitering in the day room of this living unit and yelled for everyone in the unit to "cell in". When inmates are told by any DOC staff member to cell in they are required to immediately proceed to their assigned cells, to go into their cells, and to remain in their cells. After CO Hattel yelled for inmates to cell in,

---

[2] Defendants Harp and Thompson were previously dismissed from this action on August 19, 2013 for lack of personal jurisdiction. Dkt. 28.

REPORT AND RECOMMENDATION- 2

he immediately proceeded up the stairs to the upper tier of the pod where he observed CO Persell give several directives to inmates in the bathroom to stop fighting. *Id*., pp. 2-3.

At this time CO Hattel noticed several inmates, including Mr. Battle, loitering on the upper tier and yelled again for the inmates to cell in. Shortly after this CO Persell gave an order for inmates to cell in. CO Hattel then looked down the tier and saw Mr. Battle standing in front of his cell door looking down the tier where the fight had occurred. At this time inmate Jesse Hill, DOC No. 837612, walked past Mr. Battle towards the fight area and Mr. Battle started to follow inmate Hill. CO Hattel and another CO then yelled for the inmates to cell in at which time the inmates on the upper tier, including Mr. Battle, complied and went into their cells. *Id*., p. 3.

CO Hattel did not issue Mr. Battle an infraction on December 25, 2012, or recommend to anyone that he be placed in segregation on December 25, 2012, because the staff in the unit were focusing their attention on those inmates who were directly involved in the fight or who actually proceeded to the fight area. The following day CO Hattel told Correctional Unit Supervisor (CUS) Kathryn Bruner what he observed in H-1 A pod on December 25, 2012, including his observation that inmates Battle and Hill ignored several orders to cell in. *Id*., p. 3. CO Hattel states that he did not tell CUS Bruner or anyone else that Mr. Battle was yelling or that Mr. Battle was instigating the fight that occurred, or that he was personally involved in the fight itself. *Id*.

CO Hattel was asked to review the SCCC videotape of the incident and to write appropriate infractions on inmates who violated prison rules during the incident on December 25, 2012. On January 14, 2013, CO Hattel wrote an infraction on Mr. Battle for committing a 509 infraction (refusal of a direct order by any staff to proceed to or disperse from a particular area).

REPORT AND RECOMMENDATION- 3

According to Defendant Hattel, he wrote the infraction based only on his observations of Mr. Battle and his review of the videotape of the incident and the infraction had nothing to do with Mr. Battle's race.  CO Hattel also wrote infractions on inmate Hill.  Other SCCC staff members, including CO Persell, wrote infractions on the other inmates who were involved in the December 25, 2012 disturbance.  *Id.*, pp. 3-4.

CO Hattel was not involved in placing Mr. Battle in segregation and did not have any involvement in Mr. Battle's disciplinary hearing on the 509 charge.  It is CO Hattel's understanding that Mr. Battle was found not guilty of the 509 infraction.  *Id.*, Attachment A, Incident Report dated December 25, 2012, and Attachment B, Infraction Report dated January 2013.

Kathryn Bruner is the Correctional Unit Supervisor at SCCC.  She did not work at SCCC on December 25, 2012. When CUS Bruner returned to work on December 26, 2012, she was informed that there had been a major disturbance in H-1 A pod which involved a fight in the upper tier bathroom between several Asian inmates and several African-American inmates.  She reviewed the incident reports concerning the incident and talked with several of the staff members who responded to the incident and determined that every inmate who was either directly involved in the incident or who violated prison rules during the incident should be placed in segregation until a thorough investigation of what occurred and why it occurred could be done.  Dkt. 47-1, Exhibit 2, Declaration of Kathryn Bruner, p. 10.

Ms. Bruner states that it appeared that there was a racial element to the incident as all the fighters were either Asian or African American, and the inmates who ran to the scene of the fight were either Asian or African American.  *Id.*, pp. 10-11.

REPORT AND RECOMMENDATION- 4

On December 26, 2012, CUS Bruner was under the impression that Mr. Battle was involved in yelling and instigating the fight as well as refusing orders to cell in. She does not recall precisely who provided her this information but was under the impression that she got it from CO Hattel. She therefore authorized Mr. Battle to be placed in segregation until the incident could be thoroughly investigated. *Id*., p. 11. Within a short time after the incident it was determined that Mr. Battle was not yelling or instigating the fight but that he failed to cell in after receiving multiple orders to cell in. Defendant Bruner states that she may have confused Mr. Battle's actions with the actions of another inmate in mistakenly asserting that Mr. Battle was yelling and instigating the fight. Nevertheless, according to Ms. Bruner, Mr. Battle's failure to cell in when given multiple orders to do so provided a sufficient basis to place him in segregation pending an investigation into the December 25, 2012 disturbance. CO Hattel later issued Mr. Battle a 509 infraction for failing to cell in. *Id*.

According to Defendant Bruner, the actions she took concerning Mr. Battle were taken solely based on her understanding of his involvement in the December 25, 2012 incident and were not taken because of Mr. Battle's race or for any other inappropriate reason. Dkt. 47-1, Exhibit 2, Declaration of Kathryn Bruner, p. 11, and Attachment A, Segregation Authorization issued for Mr. Battle, and Attachment B, Administrative Segregation Referral.

Mr. Battle states that he was found not guilty of the infraction at the January 21, 2012 infraction hearing after Hearing Officer Stella Jenning's reviewed the videotape of the December 25, 2012 incident. Dkt. 5.

**B.     Prison Account Funds – Defendants Warner and Land**

According to Daniel M. Lewis, DOC Trust Accounting Manager, DOC uses a computerized accounting system, the Trust Account System (TAS), to track all credits and debits

REPORT AND RECOMMENDATION- 5

to inmates' accounts. Dkt. 47-1, Exhibit 3, Declaration of Daniel M. Lewis, p. 17. With very few exceptions, any deductions that DOC makes from inmates' funds occur at the time inmates receive funds into their prison accounts from their prison jobs or from persons or entities outside of prison. When inmates receive funds, DOC accounting staff determine the type of the funds received and assign the funds a specific code. TAS then automatically makes the appropriate deductions for the type of funds received. Funds can be exempt from all deductions, partially exempt from deductions, or non-exempt. All statutorily authorized deductions can be made from non-exempt funds. Inmates' wages and gratuities are considered to be non-exempt funds and are therefore subject to the deductions required by state law, including RCW 72.09.111 and RCW 72.09.450. *Id.*, pp. 17 and 18.

In May 2011, DOC received an order from the Ninth Circuit Court of Appeals, Cause No. 11-35327, requiring DOC to compute, collect, and forward to the federal district court an initial partial filing fee for an appeal filed by inmate James Battle, DOC No. 749272. When DOC receives orders to calculate initial partial filing fees for federal court cases, these orders usually indicate that all funds in inmates' accounts may be deducted to pay such fees. *Id.*, p. 18.

DOC previously received an order from the federal District Court in Cause No. C09-818-RAJ-BAT requiring DOC to calculate, deduct, and send to the District Court an initial partial filing fee for Mr. Battle, and this Order stated that the "$10.00 limit does not apply to the initial partial filing fee." Pursuant to the Court's order and DOC's standard procedures, DOC calculated the initial partial filing fee for Mr. Battle's Ninth Circuit appeal to be $12.58 and on May 17, 2011, sent the remaining $10.00 in Plaintiff's inmate account to the district court. *Id.*, p. 18.

REPORT AND RECOMMENDATION- 6

1   Mr. Lewis states that the Ninth Circuit may not have intended to make all Mr. Battle's
2  funds available to pay the initial partial filing fee but only those funds in his account exceeding
3  $10.00.  Mr. Lewis does not know if the DOC accounting staff who processed the Ninth Circuit
4  order took notice of the specific language in the order but presumes accounting staff followed the
5  federal courts' usual orders for initial partial filing fees which indicate that all funds in inmates'
6
7  accounts are available to pay such fees.  *Id*., p. 18.
8   On September 15, 2011, SCCC accounting staff processed Mr. Battle's receipt of a class
9  III gratuity in the amount of $55.00.  Pursuant to state law and DOC policy 200.000, deductions
10  totaling $45.00 were made leaving Mr. Battle $10.00.  On this same date, SCCC accounting staff
11  processed several disbursement requests made by Mr. Battle for legal mail totaling $13.70 and
12  took the remaining $10.00 in Mr. Battle's account to pay for legal postage and put $3.70 debt
13  onto his account for legal postage.  *Id*., pp. 18-19.
14
15   According to Mr. Lewis, DOC generally does not take inmates' accounts below $10.00
16  for debt collection, including collection of debts for legal financial obligations and debts owed to
17  DOC.  Inmates are entitled to spend their funds on any DOC-approved items, including store
18  orders, postage, and legal photocopying.  It is unclear from Mr. Battle's official TAS trust
19  account statement when he requested and received the legal postage that was processed and
20  deducted from his account on September 15, 2011, however, Mr. Battle was not indigent at any
21  time in September 2011 under the definition set forth in DOC's mail regulations contained in
22
23  WAC chapter 137-48 and was therefore not entitled to indigent postage under DOC's
24  regulations.  *Id*. at 19.  Because SCCC accounting staff processed the legal postage disbursement
25  requests when Mr. Battle had funds in his account to pay for such postage, they properly
26  deducted funds from his account to comply with his disbursement request.  *Id*.

REPORT AND RECOMMENDATION- 7

Mr. Battle was not deprived of funds to buy items at the inmate store in September 2011 as he made three separate purchases from the inmate store in September 2011 totaling $26.18. Mr. Battle's store purchases occurred on the 1st, 12th, and 21st of September 2011 and are reflected in his trust account statement, Attachment C, as "CRS SAL ORD" on these dates. *Id*. Even though he was not indigent, Mr. Battle received legal postage and legal copies on credit several times in the month of September 2011. *Id.*

On September 16, 2011 SCCC processed two requests by Mr. Battle for legal photocopies totaling $4.60 and, since Mr. Battle had no funds in his account, this amount was put on his account as a debt. On September 16, 2011 Mr. Battle received $10.00 from a person outside of prison and these funds were placed on his account without deductions. On September 19, 2011 SCCC staff took $.20 out of Mr. Battle's inmate account for legal postage he had requested leaving $9.80 in the account. On September 21, 2011 $8.46 was taken out of Mr. Battle's inmate account pursuant to his request to pay for a store order, leaving $1.34 in the account. The remaining funds in Mr. Battle's account were taken to pay for legal mail requested and received by Mr. Battle in September 2011. *Id.*, pp. 19-20.

Mr. Lewis states and it is undisputed, that Defendants Stephen Land and Bernard Warner were not personally involved in making the deductions from Mr. Battle's account. *Id.*, p. 20.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are facts which might affect the outcome of the pending action under governing law. *See Anderson*, 477 U.S. at 248. Genuine

REPORT AND RECOMMENDATION- 8

disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id*. A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

**DISCUSSION**

**A.      Unlawful Segregation Claim**

Mr. Battle alleges that Defendants Hattel and Bruner unlawfully placed him in segregation using false information and because of his race. He alleges that the actions of Defendants Hattel and Bruner violated a number of his constitutional rights, including the "1st, 2nd, 5th, 6th, 8th, and 14th Amendments of the U.S. Constitution," and violated his rights under various state laws and DOC policies.   Dkt. 5, p. 18.

REPORT AND RECOMMENDATION- 9

### 1. CO Hattel

The record reflects that CO Hattel wrote an infraction against Mr. Battle for failing to cell in when he had been ordered to do so. Dkt. 47-1, Exhibit 1, Hattel Decl., p. 2. Even if the Court assumes that CO Hattel wrote a false infraction, this claim fails because the mere filing of false disciplinary charges against an inmate, even knowingly false charges, does not violate an inmate's due process or other constitutional rights. *See, e.g.*, *Freeman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984) (holdings based on conclusion that the only due process protections inmates have concerning disciplinary hearings are the due process protections provided by *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Additionally, there is no evidence in the record that CO Hattel took any action against or relating to Mr. Battle based on Mr. Battle's race.

Viewing the evidence in the light most favorable to Mr. Battle, the Court concludes that Mr. Hattel is entitled to summary judgment on this claim.

### 2. CUS Bruner

The record reflects that CUS Bruner placed Mr. Battle in administrative segregation based on her understanding of his involvement in the December 25, 2012 incident. Dkt. 47-1, Exhibit 2, Bruner Decl., p. 11. Defendant Bruner admits that she erred in indicating in the administrative segregation paperwork that Mr. Battle was yelling and instigating the fight that occurred on December 25, 2012. Ms. Bruner corrected her misunderstanding of Mr. Battle's role in the December 25, 2012 incident and placed him in administrative segregation based solely on the information provided to her by Defendant Hattel that Mr. Battle had ignored repeated orders to cell in. *Id.*

REPORT AND RECOMMENDATION- 10

Washington prisoners do not have a protected interest in remaining in the general prison population or in their classification status. *Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987); *In re Dowell*, 100 Wn.2d 770, 674 P.2d 666 (1984) (Washington State inmates do not have a liberty interest in their security classification); *Smith v. Noonan*, 992 F2d. 987 (9th Cir. 1993) (Washington State inmates do not have a protected liberty interest in remaining in the general population.)  Even if a protective liberty interest did exist here, the only procedures that due process requires with regard to administrative segregation are that: (1) an informal non-adversary hearing be held within a reasonable time after the prisoner is segregated; (2) the prisoner be informed of the charges against him or the prison officials' reasons for considering segregation; and (3) the prisoner be allowed to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.  *Toussaint v. McCarthy,* 801 F.2d 1080, 1101 (9th Cir.1986), *overruled on other grounds, Sandin v. Conner*, 515 U.S. 472 (1995).  The prisoner is not entitled to a "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint,* 801 F.2d at 1100–01 (citations omitted).

Mr. Battle acknowledges that he received two segregation notices; the first cited the reason for his segregation as "yelling and instigating" and failure to cell-in when ordered and the second cited the reason for his segregation as failure to cell-in when ordered.  According to Mr. Battle, he was found not guilty of the 509 infraction by Hearing Officer Stella Jenning at the January 21, 2013 infraction hearing.  Ms. Jenning apparently made the finding after her review of the video footage of the December 25, 2012 incident.  Dkt. 5.   Thus, if Mr. Battle was entitled

REPORT AND RECOMMENDATION- 11

to due process for his placement in administrative segregation, the evidence reflects that he received all the process that was due.

Additionally, there is no evidence in this case that CUS Bruner took any action concerning Mr. Battle because of his race. Viewing the evidence in the light most favorable to Mr. Battle, the Court concludes that CUS Bruner is entitled to summary judgment on this claim.

**B.     Unlawful Deduction from Prison Account Claim**

Mr. Battle alleges that Defendants Warner and Land unlawfully took his prison account below $10.00 when they deducted funds for a federal court filing fee in May 2011 and when they deducted funds for legal postage that Mr. Battle had requested and received in September 2011. Dkt. 5. However, Mr. Battle presented no facts to support his conclusory allegations regarding Defendants Warner and Land while it is clear from Mr. Daniel Lewis' declaration that neither Mr. Warner nor Mr. Land had anything to do with the deductions being taken. Mr. Battle alleges a failure to train on the part of Mr. Warner, however no facts have been presented to support that allegation. In addition, evidence presented by Mr. Lewis leads to the conclusion that the deductions were properly taken.

Mr. Battle has a protected property interest in the funds in his prison account. *Quick v. Jones*, 754 F.2d 1521 (9th Cir. 1985). However, the deductions challenged by Mr. Battle were consistent with federal law. 28 U.S.C. § 1915(b)(1) states that "[t]he court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee . . . ." This statutory provision does not indicate that the initial partial filing fee for an action or appeal can only be collected when the inmate's account exceeds $10.00, but instead unambiguously requires collection "when funds exist". This Court has interpreted this statute to allow the deduction of all the funds in inmates' accounts to pay initial partial filing fees:

REPORT AND RECOMMENDATION- 12

Please note that this $10.00 limit does not apply to the initial partial filing fee described above.

Dkt. 47-1, Exhibit 3, Attachment A (Order Granting Application to Proceed In Forma Pauperis in Case No. C09-818-RAJ-BAT).

Defendants concede that Mr. Battle's claim concerning the initial partial filing fees collected by DOC in May 2011 arguably finds some support in the Ninth Circuit's Order stating that the DOC was to "assess, collect, and forward to the district court" an initial filing fee, and that "Appellant is not responsible for payment when the funds in Appellant's prison trust account total less than $10.00." Dkt. 47-1, Exhibit 3, Attachment B. However, the Ninth Circuit's Order also indicates that the filing fees are to be assessed, collected, and forwarded "pursuant to 28 U.S.C. § 1915(b)(1) and (2). *Id.*

Because 28 U.S.C. § 1915(b)(1) required DOC to collect all the funds in Mr. Battle's prison account to pay the initial partial filing fee for his appeal, the deductions taken were proper and do not support a failure to train claim.

With regard to deductions for legal mail, on or before September 15, 2011, Mr. Battle requested and received legal mail totaling $13.70. Dkt. 47-1, Exhibit 3, Lewis Decl. The requests for legal mail were processed as current withdrawals from Mr. Battle's account for items he requested and received. The requests were not treated as indigent postage because Mr. Battle was not indigent at any time in September 2011. *Id*.

Under Washington law, an inmate is indigent and entitled to a limited amount of postage only if the inmate "has less than a ten-dollar balance of disposable income in his or her institutional account on the day a request is made to utilize funds and during the thirty days previous to the request." RCW 72.09.015(15); see also WAC 137-48-020(4) (same). According to the records, Mr. Battle's account did not meet this definition of indigent. Pursuant to WAC

REPORT AND RECOMMENDATION- 13

137-48-060(1), mail costs "shall be the responsibility of the inmate." Under WAC 137-48-060(3), only indigent inmates are entitled to receive postage on credit.

In addition, the record reflects that Mr. Battle was allowed to make three separate purchases from the inmate store in September 2011 totaling $26.18 and that he was provided legal postage on credit several times during the month of September 2011. Dkt. 47-1, Exhibit 3. Lewis Decl. In light of these facts, the Court concludes that the deductions were appropriate and do not support a failure to train claim against Defendant Warner.

Mr. Battle's reliance on RCW 72.09.450 does not change the result. This statute requires that indigent inmates not be denied services or supplies required by state or federal law and that the assessments for such services or supplies provided by DOC be recorded as debts on inmates' accounts which may be collected "when the inmate's institutional account exceeds the indigency standard." RCW 72.09.450(2). This statute does not apply to Mr. Battle as he was not indigent in September 2011, he was not denied any services or supplies, and debt was put on his account because he had sufficient funds in his account to pay for the postage he requested and received. Because Mr. Battle was not indigent in September 2011, the deductions of funds from his account for postage he requested and received were in conformance with the law and did not violate his rights under state or federal law. Defendants Warner and Land are entitled to summary judgment on this claim.[3]

[3] It is unclear if Plaintiff is asserting a claim in this case that the Defendants violated federal law by making multiple deductions from his account for federal court filing fees. However, Plaintiff previously litigated this issue in this Court which ruled that DOC may collect multiple federal court filing fees. *See Battle v. Vail et al.*, C10-5205 RBL/KLS. Therefore Defendants argue, and this Court agrees, that this claim is barred under the doctrine of collateral estoppel and/or res judicata.

### C. Defendant Eldon Vail

The Court turns now to Eldon Vail, the one remaining defendant named in Mr. Battle's complaint. Mr. Vail is named as a defendant in the caption of the complaint and is named as an "additional defendant" on page 3 of the complaint. However, the complaint is completely devoid of any factual allegations relating to Mr. Vail. Dkt. 5, p. 3. There is also no evidence that Mr. Vail was ever served with the complaint and therefore, this Court lacks personal jurisdiction over him. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R .Civ. P. 4"). However, any attempt at service at this time would be futile as Mr. Battle makes no allegations against Mr. Vail and Mr. Battle has failed to otherwise establish the existence of any constitutional violation in this lawsuit. Thus, the Court recommends that Mr. Vail be dismissed from this lawsuit.

### D. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Dkt. 47, p. 13. Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

REPORT AND RECOMMENDATION- 15

As the Court has concluded that Mr. Battle has failed to raise material issues of fact relating to his constitutional claims against Defendants, it is not necessary to address the question of qualified immunity.

## CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment (Dkt. 47) be **GRANTED,** Plaintiff's claims against Defendants K. Bruner, Arlen Hattel, Stephen Land, and Bernard Warner be **dismissed with prejudice** and Plaintiff's claims against Eldon Vail be **dismissed without prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 28, 2014**, as noted in the caption.

**DATED** this   5th   day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 16